**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the Landmark Bank, plaintiff,**

v.

**Robert H. HAINES, III and Theodore N. Kaplan, et al, defendants.**

**No. Civ. 3:94CV0473 (AVC).**

United States District Court, D. Connecticut.

Sept. 9, 1997.

Eric Watt Wiechmann, Douglas M. Poulin, Peter W. Hull, Karen L. Wagshul, Cummings & Lockwood, Hartford, CT, Paul E. Knag, Rali P. Esterman, Cummings & Lockwood, Stamford, CT, Steven L. Feldman, Shapiro, Israel & Weiner, Boston, MA, for FDIC.

Jeffrey J. Tinley, William Thomas Blake, Jr., Tinley, Nastri, Renehan & Dost, Waterbury, CT, Karry Marc Wisser, Nathan A. Schatz, Richard P. Weinstein, Weinstein & Wisser, P.C., West Hartford, CT, for Defendants.

## RULING ON PARTIAL MOTION FOR SUMMARY JUDGMENT

COVELLO, Chief Judge.

This is an action for damages in which the plaintiff, the Federal Deposit Insurance Corporation ("FDIC"), as the receiver for the Landmark Bank ("Landmark"), alleges that the defendants, Robert Haines, et al, were negligent, grossly negligent, and breached their fiduciary duty with respect to their management and operation of the failed bank. It is brought pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101–73, 103 Stat. 183. On March 1, 1997, the FDIC filed the within motion for partial summary judgment. The issues presented are: (1) whether the court may apply a federal common law precept to displace state common law affirmative defenses that challenge the conduct of the FDIC as the receiver of Landmark; (2) whether the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), protects the FDIC from claims arising from its conduct as the receiver of Landmark; (3) whether Connecticut law would operate to bar any claims against the FDIC arising from its conduct as the receiver of Landmark; (4) whether 12 U.S.C. § 1821(k), by authorizing claims against officers and directors for "gross negligence" preempts state common law claims for conduct less than grossly negligent; and (5) whether the defendants' remaining defenses would defeat an otherwise legitimate claim for relief and, therefore, constitute valid affirmative defenses within the meaning of Fed.R.Civ.P. 8(c).

For the reasons that follow, the motion for partial summary judgment is granted in part and denied in part. Document number 500.

## FACTS

Examination of the complaint, together with the memorandums, affidavits and Local Rule 9 statements submitted in support of the motion for summary judgment, and the response thereto, discloses the following undisputed material facts. On March 28, 1991, the commissioner of the department of banking for the state of Connecticut declared Landmark insolvent and appointed the FDIC as its receiver. On March 25, 1994, the FDIC brought this action alleging that the former officers and directors were negligent, grossly negligent, and breached their fiduciary duties with respect to their management and operation of the failed bank. The defendants thereafter asserted multiple affirmative defenses against the FDIC.[1]

## STANDARD OF REVIEW

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Rule 56(c) "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). "One of the principal purposes of the sum-

---

1. Specifically, these defenses include: (1) the failure to mitigate damages; (2) the failure to prove that the target loans cannot be collected and that reasonable steps have been taken to collect the loans; (3) negligence in collection of the target loans; (4) comparative and or contributory negligence; (5) estoppel based upon the FDIC's alleged loss or destruction of loan documents; (6) conflict of interest in the application of funds to loans of other failed banks; (7) preemption of state and federal common law claims by 12 U.S.C. § 1821(k); (8) intervening causes;

(9) fair dealing with respect to the affairs of the bank; (10) that the bank's loans were consistent with prevailing banking practice; (11) no personal gain to the defendants; (12) the defendants relied upon the advice of others; (13) passive negligence of the defendants; (14) failure to plead in accordance with Fed.R.Civ.P. 8. Because the defendants have filed separate answers with different affirmative defenses, the court will refer to the specific affirmative defenses as they appear above and not as they appear in a particular defendant's answer.

mary judgment rule is to isolate and dispose of factually unsupported claims ... [and] it should be interpreted in a way that allows it to accomplish this purpose." *Celotex v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A motion for summary judgment is an appropriate mechanism to challenge an affirmative defense. 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 2d § 2737 (1983). "Where a plaintiff uses a summary judgment motion ... to challenge the legal sufficiency of an affirmative defense ... a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's] case." (citations omitted; internal quotation marks omitted) *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir.1994). "[D]isputed legal questions present nothing for trial and [are] appropriately resolved on a motion for summary judgment." (citations omitted; internal quotation marks omitted) *Flair Broadcasting Corp. v. Powers*, 733 F.Supp. 179, 184 (S.D.N.Y.1990).

## DISCUSSION

### A. *Affirmative Defenses One Through Six.*

The plaintiff first argues that, with respect to affirmative defenses numbered one through six, the defenses are insufficient as a matter of law because the discretionary conduct of the FDIC is protected by: (1) the federal common law no duty rule; and (2) the discretionary function exemption to the Federal Tort Claims Act. 28 U.S.C. § 2680(a). The plaintiff further argues that, even if federal law did not operate to bar these affirmative defenses, Connecticut state law would.

## I. FEDERAL COMMON LAW

The plaintiff first claims that, with respect to a claim brought pursuant to FIRREA, federal common law displaces state common law and, under federal common law, the FDIC is insulated from any affirmative defenses arising out of its conduct as the receiver. The plaintiff cites two recent decisions within this district to support this argument. See *F.D.I.C. v. Raffa*, 935 F.Supp. 119 (D.Conn.1995); *F.D.I.C. v. Collins*, 920 F.Supp. 30 (D.Conn.1996).

The defendants respond that the Supreme Court's recent decision in *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), determined that federal common law can not modify or supplement the comprehensive statutory framework enacted under FIRREA and, under FIRREA, specifically 12 U.S.C. § 1821(k), state common law governs the determination of their affirmative defenses. Title 12, U.S.C. § 1821(k) provides that claims brought by the FDIC against officers and directors of a failed financial institution shall be brought under such terms as "defined and determined under applicable state law." The defendants further argue that under state common law the FDIC is not immune from claims that challenge its conduct as the receiver and, therefore, that these claims constitute valid affirmative defenses within the meaning of FED.R.CIV.P. 8(c).

### 1. *Background.*

#### i. Federal Common Law and the "No Duty Rule."

"There is no federal general common law." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). There are, however, "cases in which the creation of a special federal [common law] rule would be justified. Such cases are, as we have said in the past, few and restricted, limited to situations where there is a significant conflict between some federal policy or interest and the use of state law." (citations omitted; internal quotation marks omitted) *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

The 'no duty' rule is a federal common law precept which provides that the FDIC's sole purpose is to promote the stability of the banking system,[2] protect depositors, the insurance fund and the public,[3] and,

---

**2.** *D'Oench Duhme & Co. v. F.D.I.C.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

**3.** *F.D.I.C. v. Raffa*, 935 F.Supp. 119 (D.Conn. 1995).

therefore, the FDIC owes no duty to the officers and directors of a failed financial institution.[4] This district has consistently applied the 'no duty' rule to insulate the FDIC from claims and defenses arising out of its conduct as the regulator and as the receiver of a failed financial institution. See *F.D.I.C. v. Raffa*, 935 F.Supp. 119, 124 (D.Conn.1995); *F.D.I.C. v. Collins*, 920 F.Supp. 30, 34 (D.Conn.1996). "In fulfilling its regulatory responsibilities the FDIC's duty runs only to the public and depositors." *F.D.I.C. v. Collins*, 920 F.Supp. 30, 34 (D.Conn.1996). The courts in this district, in support of this proposition, have relied upon the reasoning articulated by the seventh circuit in *F.D.I.C. v. Bierman*, 2 F.3d 1424 (7th Cir.1993).

> It is the duty of the FDIC to manage [the failed financial institution's] assets in order to replenish the insurance fund that has been used to cover the losses allegedly caused by the directors and officers. When the FDIC undertakes this task, it must act in the public interest. Its task is to replenish the insurance fund to cover the losses of the depositors and to maintain confidence in the soundness of the Nation's banking system. Indeed, Congress has made it clear that the FDIC is to exercise its discretion in choosing a course of action in its efforts to replenish the fund.... Therefore, when the FDIC acts to replenish the insurance fund through the disposition of assets of the failed bank, including the right of action against the officers and directors, it has no duty first to attempt to mitigate the damages attributed to those individuals by seeking other, and perhaps less sure, avenues of relief.

*F.D.I.C. v. Bierman*, 2 F.3d 1424, 1439 (7th Cir.1993). "[I]f an affirmative defense includes an element of duty owed by the FDIC, it is insufficient as a matter of law. Similarly, if an affirmative defense challenges the discretionary acts of the FDIC, it is insufficient as a matter of law." *F.D.I.C. v. Raffa*, 935 F.Supp. 119, 124 (D.Conn.1995). "As this court held in *Raffa*, a defense predi-

cated on the FDIC's breach of duty or failure to act fails as a matter of law." *F.D.I.C. v. Collins*, 920 F.Supp. 30, 34 (D.Conn.1996).

### ii. O'Melveny & Myers and the No Duty Rule.

In *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), the FDIC, as the receiver of a failed savings and loan institution, asserted claims of negligence and breach of fiduciary duty against a law firm that had provided services relating to certain real estate transactions for the savings and loan. The law firm moved for summary judgment on the state common law ground that the fraudulent conduct of the officers and directors must be imputed to the savings and loan and, therefore, to the FDIC as its receiver. The issue presented was "whether the California rule of decision [i.e. California common law] is to be applied to the issue of imputation or displaced [by federal common law]" *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 85, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

The parties in *O'Melveny* were unsure as to whether FIRREA applied at all to the FDIC's conduct in that case because the FDIC was appointed receiver in 1986, three years prior to FIRREA's enactment.[5] The Supreme Court, therefore, divided its analysis into two parts. "We are reluctant to rest our judgment on FIRREA alone, however, since that statute was enacted into law in 1989, while respondent took over as receiver ... in 1986 ... It seems to us imprudent to resolve the retroactivity issue on the basis of the FDIC's concession, since that would make our decision of limited value in other cases." *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). The court's analysis in the first part of the decision assumed that FIRREA did apply, and the analysis in the second part assumed that it did not.

Assuming that FIRREA did apply, the court concluded that FIRREA was a comprehensive and detailed statutory scheme

---

4. *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1324 (5th Cir.1994).

5. In the present case, the FDIC was appointed receiver on March 28, 1991. There is no dispute that FIRREA applies to all the claims in the present action.

and, therefore, that federal courts may not modify or supplement its provisions with a federal common law precept.

Respondent argues that § 1821(d)(2)(a)(i) should be read as a nonexclusive grant of rights to the FDIC receiver, which can be supplemented or modified by federal common law; and that FIRREA as a whole, by demonstrating the high federal interest in this area, confirms the courts authority to promulgate such common law. **This argument is demolished by those provisions of FIRREA which specifically create special federal rules of decision regarding claims by, and defenses against, the FDIC as receiver** .... Inclusio unius, exclusio alterius.[6] It is hard to avoid the conclusion that § 1821(d)(2)(a)(i) places the FDIC in the shoes of the insolvent S & L, to work out claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise. To create additional "federal common-law" exceptions is not to "supplement" this scheme, but to alter it.

(Emphasis added) *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86–87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

The court's analysis in the second part of the decision assumed that, because the FDIC's appointment as receiver predated the enactment of FIRREA, FIRREA's statutory provisions did not govern the determination of the FDIC's claims against the law firm. The court concluded that there was no federal policy interest in precluding a defendant from raising an imputation defense based upon the pre-receivership conduct of private parties where state common law would allow such a defense. The court concluded that "this is not one of those extraordinary cases in which the judicial creation of a federal rule of decision is warranted." *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 89, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

### 2. Analysis.

The plaintiff first argues that, with respect to affirmative defenses numbered one

through six, the defenses are insufficient as a matter of law because the discretionary conduct of the FDIC is protected by the federal common law no duty rule.

The defendants respond that the Supreme Court's decisions in *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) and *Atherton v. F.D.I.C.*, 519 U.S. 213, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997), abolished the federal common law 'no duty' rule with respect to the FDIC's role as the receiver of a failed bank. The defendants contend that there "is no federal general common law" and, therefore, that the 'no duty' rule cannot override state common law precepts. The defendants further argue that FIRREA is a "comprehensive and detailed Congressional scheme" and that "matters left unaddressed in such a scheme are presumably left subject to disposition provided by state law." *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 85, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). The defendants contend that it would be unfair to allow the FDIC "to step into the shoes of the failed banking corporation to bring state law claims, but at the same time clothe itself in a 'government persona' to avoid recognized state law defenses which necessarily define and limit the state law claims upon which its right of recovery rests."

The plaintiff further argues, however, that the present case is distinguishable from *O'Melveny & Myers* on the ground that *O'Melveny* is limited to defenses arising from the pre-receivership conduct of private actors. The plaintiff argues that the Supreme Court, in the second part of its opinion, categorically distinguished its holding from the issue presented here: whether a defendant may raise a state common law affirmative defense against the FDIC based upon actions taken in the execution of its statutory obligations as the receiver of the failed bank. The plaintiff bases this interpretation on the following sentence from *O'Melveny:*

---

**6.** The inclusion of one is the exclusion of another. This doctrine decrees that where law expressly describes the particular situation to which it shall apply, an irrefutable inference must be drawn that what is omitted or excluded was intended to be omitted or excluded. BLACKS LAW DICTIONARY 763 (6th ed.1990).

The rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred.

*O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 88, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). The plaintiff therefore contends that *O'Melveny & Myers* has no application to post receivership conduct of the FDIC in the discharge of its statutory obligations. See *F.D.I.C. v. Raffa*, 935 F.Supp. 119, 125 (D.Conn.1995); *F.D.I.C. v. Collins*, 920 F.Supp. 30, 34 (D.Conn.1996).

The court agrees with the defendants that the affirmative defenses presented here are not barred by a federal common law precept. The court first concludes that, because the FDIC was appointed as the receiver after the enactment of FIRREA, FIRREA governs the determination of all the claims in this matter. The court therefore concludes that the plaintiff wrongly relied upon the portion of the *O'Melveny* analysis that presumed FIRREA was inapplicable. The relevant portion of the *O'Melveny* analysis unambiguously held that courts may not modify or supplement FIRREA with a federal common law rule. The court further concludes that the plaintiff has failed to demonstrate that there existed a conflict between Connecticut common law and a significant federal policy or interest sufficient to justify the judicial creation of a special federal common law rule. In so concluding, the court expressly rejects the rationale relied upon by the courts in *F.D.I.C. v. Raffa*, 935 F.Supp. 119 (D.Conn.1995) and *F.D.I.C. v. Collins*, 920 F.Supp. 30 (D.Conn.1996).

i. FIRREA and Federal Common Law.

The court concludes that it may not apply a federal common law precept to displace the defendants' common law affirmative defenses presented here. In the present case, the FDIC was appointed receiver of Landmark on March 28, 1991. FIRREA was enacted into law in 1989. It is therefore undisputed that FIRREA governs the determination of the plaintiff's claims in this matter. The court first concludes that, because FIRREA governs the determination of the claims presented here, only the first section of *O'Melveny & Myers* is relevant to the court's analysis. The court therefore concludes that the plaintiff's reliance on the second part of *O'Melveny & Myers* to support its argument is misplaced. The plaintiff relies upon the following sentence to argue that *O'Melveny* applies only to private parties and not to the FDIC as the receiver.

The rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred.

*O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 88, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). This analysis is flawed, however, because "[a]ny reliance on the quoted sentence from the second part of *O'Melveny*, which analyzed the application of federal common law in the absence of FIRREA, to construe the first part of O'Melveny, which analyzed the application of federal common law to post FIRREA suits, is wholly misplaced." *F.D.I.C. v. Schreiner*, 892 F.Supp. 848, 856 (W.D.Texas 1995).

As previously noted ... there are two parts of O'Melveny. This sentence comes from the second part, in which the court analyzes whether a federal rule of decision would be appropriate in the absence of FIRREA. The sentence is one of the bases for the court's rejection of the federal common law in the absence of FIRREA. If there were no FIRREA, the court's task would be to determine whether federal policy conflicted with the use of state law affirmative defenses. In that situation, the fact that the RTC's conduct is at issue might be a reason to apply a federal rule. The federal policy interests would be even stronger in this case than they were in O'Melveny. But that is not the situation. FIRREA exists.

*R.T.C. v. Liebert*, 871 F.Supp. 370, 371 (C.D.Cal.1994). See also *F.D.I.C. v. Schreiner*, 892 F.Supp. 848, 856 (W.D.Texas 1995).

The relevant portion of *O'Melveny* unambiguously rejected the FDIC's argument that federal common law may supplement or modify FIRREA's comprehensive and detailed federal statutory framework. "It is hard to avoid the conclusion that § 1821(d)(2)(a)(i) places the FDIC in the shoes of the insolvent S & L, to work out claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise. To create additional 'federal common-law' exceptions is not to 'supplement' this scheme, but to alter it." *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86–87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

There is no statutory provision in FIRREA to limit the affirmative defenses presented here. Moreover, FIRREA, specifically 12 U.S.C. § 1821(k), authorizes suits against officers and directors of failed institutions to proceed under state common law.

> a director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request of the [FDIC] ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of duty of care (than gross negligence) including intentional tortious conduct, *as such terms are defined and determined under applicable state law.*

12 U.S.C. § 1821(k) (emphasis added). Because FIRREA creates no special provision to limit the available affirmative defenses, the court may not alter FIRREA's comprehensive scheme to do so. See footnote number 6, *supra.*

### ii. Significant Federal Policy or Interest.

▉ The court further concludes that the plaintiff has failed to demonstrate that this matter involves one of the few and restricted areas presenting a conflict with a significant federal policy or interest necessary to justify the judicial creation of a special federal common law rule. The Supreme Court in *Atherton v. F.D.I.C.*, 519 U.S. 213, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997) reaffirmed the traditional analytical framework for establishing limited areas of federal common law.

The court has said that cases in which judicial creation of a special federal rule would be justified are few and restricted. Whether latent federal power should be exercised to displace state law is primarily a decision for Congress, not the federal courts. Nor does the existence of related federal statutes automatically show that Congress intended courts to create federal common law rules, for Congress acts against the background of the total corpus juris of the states. Thus, normally, when courts decide to fashion rules of federal common law, the guiding principle is that a significant conflict between some federal policy or interest and the use of state law must first specifically be shown.

(citations omitted; internal quotation marks omitted) *Atherton v.. F.D.I.C.*, 519 U.S. 213, 117 S.Ct. 666, 670, 136 L.Ed.2d 656 (1997). The Court determined that where "the FDIC is acting only as the receiver of the failed institution; it is not pursuing the interest of the Federal Government as a bank insurer ..." *Id.*, 117 S.Ct. at 672. "[T]he FDIC is not the United States, and even if it were we would be begging the question to assume that it was asserting its own rights rather than, as receiver, the rights of [the failed bank]." *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 85, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). Because the FDIC is not pursuing the interests of the United States, its conduct can not represent significant federal policies or interests sufficient to justify the imposition of a federal common law.

The court further rejects the remaining alleged 'significant federal policies or interests' cited by the court in *Raffa* and *Collins* to justify the imposition of a federal common law rule. For example, the court concluded that "[i]t is the duty of the FDIC to manage such assets in order to replenish the insurance fund that has been used to cover the losses allegedly caused by the officers and directors." *F.D.I.C. v. Raffa*, 935 F.Supp. 119, 125 (D.Conn.1995) quoting *F.D.I.C. v. Bierman*, 2 F.3d at 1439. The court thereafter concluded:

> nothing could be more paradoxical or contrary to sound policy than to hold that it is the public which must bear the risk of

errors of judgment made by its officials in attempting to save a failing institution—a risk which would never have been created but for the defendants' wrongdoing in the first place ... The 'No Duty Rule' paints a bright line that maintains the court's focus on the persons whose alleged wrongdoing brought about the insolvency in the first instance.

*F.D.I.C. v. Raffa,* 935 F.Supp. 119, 124 (D.Conn.1995).

This analysis is deficient for two reasons. First, the Supreme Court specifically rejected the argument that there was a public policy to enrich the insurance fund.

> [N]either FIRREA nor the prior law sets forth any anticipated level for the fund, so what respondent means by 'depletion' is simply the foregoing of any money which, under any conceivable legal rules, might accrue to the fund. This is a broad principle indeed, which would support not just elimination of the defense at issue here, but judicial creation of new, 'federal common law' causes of action to enrich the fund. Of course we have no authority to do that, because there is no federal policy that the fund should always win. our cases have previously rejected 'more money' arguments remarkably similar to the one made here.

*O'Melveny & Myers v. F.D.I.C.,* 512 U.S. 79, 86–87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). Second, to the extent the decision focuses on the alleged wrongdoing of the defendants, its analysis is predicated on the assumption that the defendants are guilty of wrongdoing. The question of the defendants 'wrongdoing' is, of course, a final conclusion properly determined by the jury at trial.

For all the foregoing reasons, the court concludes that the plaintiff has failed to identify a significant federal policy or interest sufficient to justify the judicial creation of a special federal common law rule.

## II. DISCRETIONARY FUNCTION EXCEPTION

The plaintiff next argues that the FDIC's conduct as the receiver of a failed financial institution is protected by the discretionary function exception to the Federal Tort Claims Act or a common law analogy to that statutory provision. The plaintiff argues that the Supreme Court in *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), specifically determined that discretionary acts taken by the FDIC as the regulator are protected by the discretionary function exemption to the Federal Tort Claims Act. The plaintiff argues that FIRREA requires the FDIC to make many discretionary judgments that should be protected from judicial second guessing. The plaintiff further argues that the court should apply a federal common law analogy protecting the FDIC from claims arising from its discretionary acts as the receiver of a failed financial institution.

The discretionary function exception to the Federal Tort Claims Act provides that the Government is not liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due case, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The plaintiff cites the Supreme Court's decision in *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) in support of the proposition that the FDIC, acting in its pre-receivership capacity as the regulator, was shielded by the discretionary function exception. The Court concluded that "the actions of Government agents involving the necessary element of choice and grounded in the social, economic, or political goals of the statute and regulations are protected." *United States v. Gaubert,* 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). The Court noted that

> [w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agents acts are grounded in policy when exercising that

discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.

*Id.* at 324–25, 111 S.Ct. 1267.

 The Supreme Court's holding in *Gaubert,* however, is distinguishable from the present case. First, *Gaubert* involved the conduct of the United States as the regulator of the financial institution and not the as the receiver. As noted above, the FDIC's role as the regulator is substantially different from its role as the receiver. "[T]he FDIC as receiver 'steps into the shoes' of the failed [institution]" *O'Melveny & Myers v. F.D.I.C.,* 512 U.S. 79, 86, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). It "is not pursuing the interest of the Federal Government ..." *Atherton v. F.D.I.C.,* 519 U.S. 213, 117 S.Ct. 666, 672, 136 L.Ed.2d 656 (1997). Second, the discretionary function exception is not a court fashioned federal common law rule but a statute created by Congress. 28 U.S.C. § 2680(a). In the present case: (1) there is no claim under the Federal Tort Claims Act; (2) "the FDIC is not the United States" *O'Melveny & Myers v. F.D.I.C.,* 512 U.S. 79, 85, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994); and (3) the FDIC is the plaintiff and not the defendant.

The court also rejects the plaintiff's argument that the court should apply a federal common law analogy to the discretionary function exception. The court has already determined, for the reasons articulated above, that it may not supplement or modify FIRREA's comprehensive and detailed statutory framework with a federal common law precept.

For all of the foregoing reasons, the court concludes that the defendants' claims with respect to affirmative defenses numbered one through six are not barred by the application of a federal common law rule or the discretionary function exception to the Federal Tort Claims Act.

## III. CONNECTICUT LAW

The plaintiff finally argues that Connecticut law would bar the affirmative defenses which address the discretionary conduct of the FDIC even if federal law would not. The plaintiff cites no controlling precedent in support of this proposition. The plaintiff argues, however, that in the absence of Connecticut supreme court precedent, this court should do its "best to estimate how the relevant state courts would perform their lawmaking tasks." In making this determination, the court should "assume that the state's highest court would adopt the view which, consistent with its precedent, seems best supported by the force of logic and the better reasoned authorities." The plaintiff contends that the Connecticut supreme court would "adopt the prevailing rule adopted by virtually all of the federal courts, and hold that defendants sued by federal banking agencies cannot respond with affirmative defenses or other legal doctrines that seek to put the banking authorities on trial."

 The court agrees with the defendants that Connecticut law permits the defendants to assert the above referenced affirmative defenses. The court first notes the total absence of any precedent to bar a state common law affirmative defense to a state common law tort claim. To the extent that the plaintiff would have the court rely on the logic of the majority of the federal cases, these arguments have been considered and rejected above. After a review of the relevant federal law cited above, the court further concludes that the position "best supported by the force of logic and the better reasoned authorities" would permit the defendants to assert these defenses.

The court has considered the plaintiff's remaining arguments with respect to affirmative defenses numbered one through six and finds them to be without merit.

### B. *Affirmative Defense Seven.*

 The plaintiff also argues that the defendants' seventh affirmative defense is insufficient as a matter of law. The defendants' seventh affirmative defense alleges that FIRREA, specifically 12 U.S.C. § 1821(k), by authorizing the FDIC to bring claims for gross negligence against officers and directors of a failed financial institution, preempts any state common law claims for

conduct less than grossly negligent. The defendants do not contest this assertion.

Title 12, U.S.C. § 1821(k) provides that a "director or officer" of a federally insured bank "may be held personally liable for monetary damages ... [in a] civil action ... for gross negligence ... [or] similar conduct ..." The Supreme Court has recently interpreted this passage as allowing the FDIC to bring state common law claims against officers and directors for conduct that is less than grossly negligent.

> In our view, the statute's "gross negligence" standard provides only a floor—a guarantee that officers and directors must meet at least a gross negligence standard. It does not stand in the way of a stricter standard than the laws of some states provide.

*Atherton v. F.D.I.C.*, 519 U.S. 213, 117 S.Ct. 666, 674, 136 L.Ed.2d 656 (1997). Based upon the Supreme Court's recent decision, the court concludes that the defendants' seventh affirmative defense is insufficient as a matter of law.

### C. *Affirmative Defenses Eight Through Twelve.*

█ FED.R.CIV.P. 8(c) provides that a responsive pleading "shall set forth affirmatively ... [certain enumerated defenses] ... and any other matter constituting an avoidance or affirmative defense." "Affirmative defenses, if accepted by the court, will defeat an otherwise legitimate claim for relief." 2 JAMES M. MOORE ET AL, MOORE'S FEDERAL PRACTICE, ¶ 8.07(1) (3d ed.1997). "Each defendant either expressly or impliedly treats the factual allegations in a complaint as true, but then goes on to assert a new matter that eliminates or limits the defendant's ordinary liability stemming from those allegations." *Gwin v. Curry*, 161 F.R.D. 70, 71 (N.D.Ill. 1995).

█ The court concludes that the remaining affirmative defenses do not set forth any "avoidance or affirmative defense" within the meaning of FED.R.CIV.P. 8(c) but are, rather, denials of liability and assertions that the plaintiff cannot establish a prima facie case. Specifically, the court concludes that the defendants' defense of "intervening causes," that is causation, is necessarily an element of the plaintiff's case in chief. If a "matter is so plainly put into issue by being embraced by the existing pleadings, the responsive pleader is not justified in inserting a putative [affirmative defense] out of some super abundance of caution." *Gwin v. Curry*, 161 F.R.D. 70, n. 1 (N.D.Ill.1995). "Matters which are in issue from the complaint's inception need not be pleaded as affirmative defenses because such matters will not surprise the plaintiff if later raised by the defendant." *Clark v.. Milam*, 152 F.R.D. 66, 73 (S.D.W.Va.1993). To the extent that the plaintiff's damages were caused by other events, such claims may be raised at trial to rebut the plaintiff's burden of proof. See *F.D.I.C. v. White*, 828 F.Supp. 304 (D.N.J. 1993).

█ The court further concludes that affirmative defenses nine through thirteen [7] are simply denials of liability and not appropriate to "defeat an otherwise legitimate claim for relief." Finally, the court concludes that the defendants' fourteenth affirmative defense, that the plaintiff has failed to plead in accordance with FED.R.CIV.P. 8, is without merit.

### CONCLUSION

For the foregoing reasons, the plaintiff's partial motion for summary judgment is granted in part and denied in part. Document no. 500. The motion is denied with respect to affirmative defenses numbered one through six. The motion is granted with respect to affirmative defenses seven and fourteen. The motion is granted without prejudice to the defendants' right to raise the issues presented in affirmative defenses eight through thirteen at trial.

---

**7.** These defenses are: (9) fair dealing with respect to the affairs of the bank; (10) that the bank's loans . were consistent with prevailing banking practice; (11) no personal gain to the defendants; (12) the defendants relied upon the advice of others; (13) passive negligence of the defendants.