**RESOLUTION TRUST CORPORATION, as Receiver for Empire Federal Savings Bank Of America, Plaintiff,**

v.

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Defendant.**

No. 93–CV–632C.

United States District Court, W.D. New York.

Feb. 22, 2000.

Hopkins & Sutter (David G. Goroff, of Counsel), Chicago, IL, for Plaintiff.

Jaeckle Fleischmann & Mugel, LLP (Anthony J. Latona, of Counsel), Buffalo, NY, for Defendant.

## DECISION AND ORDER

CURTIN, District Judge.

## INTRODUCTION

Plaintiff Federal Deposit Insurance Corporation ("the FDIC"), acting as receiver for Empire Federal Savings Bank of America ("Empire") and as successor in interest to Resolution Trust Company ("the RTC"), has brought this motion to strike certain affirmative defenses asserted by defendant Massachusetts Mutual Life Insurance Company ("MassMutual"). Item 78. Specifically, the FDIC seeks to strike MassMutual's second and fourth affirmative defenses, see Item 6, ¶¶ 14–15, 23, and also seeks to secure an order precluding MassMutual from discovering documents and information dealing with the FDIC's post-receivership conduct. Previously, MassMutual has demanded the production of such information and documents pursuant to a prior motion to compel. Item 62.

## BACKGROUND

In September of 1990, the RTC was appointed as receiver for Empire, a failed bank. See Item 1, ¶¶ 9–10; Item 73, p. 2. As receiver, the RTC was charged with the job of winding up the business of Empire's Pension Plan ("the Plan"). See Item 1, ¶¶ 11–12. Subsequent to the RTC's appointment, the FDIC became the RTC's statutory successor in interest [1]. See Item 80, p. 1. In this action, the FDIC argues that MassMutual, as the Plan's actuary, committed professional malpractice when it erroneously advised Empire to approve a certain amendment to the Plan. See Item 67, ¶¶ 3–5. While the FDIC recognizes that the Plan was ultimately underfunded by several million dollars, it insists that the Plan's overall underfunding is not relevant in this case. See id. ¶¶ 6–7. Rather, the FDIC asserts that the relevant issue is the way in which MassMutual's malpractice caused the Plan to be underfunded by a discrete and identifiable amount—an amount which the FDIC asserts is in excess of four million dollars. See Item 73, p. 3. Moreover, the FDIC argues that, as a matter of law, its discretionary and post-receivership conduct cannot form the basis of affirmative defenses for MassMutual. See id. at 5–15. Specifically, the FDIC argues that MassMutual is barred from asserting the affirmative defenses of contributory negligence and failure to mitigate damages.

For its part, MassMutual argues that the overall underfunding of the Plan and the FDIC's post-receivership conduct are both relevant issues in this action. See Item 81, ¶¶ 9–11. MassMutual maintains that the FDIC's conduct is the true reason that the Plan wound up underfunded. See Item 70, pp. 3–4. Specifically, MassMutual claims that it has received documents in the course of discovery which reveal that the FDIC considered and rejected alternative methods of winding up the Plan. See Item 81, ¶ 10. MassMutual contends that the FDIC identified several winding-up options which would have saved the Plan a great deal of money, but that the FDIC rejected these money-saving options. Thus, MassMutual argues that the FDIC's own negligence and failure to mitigate damages caused the Plan's underfunding—both in terms of the Plan generally and in terms of the lesser amount for which the FDIC seeks to hold MassMutual responsible.

## DISCUSSION

### I. Motion to Strike Affirmative Defenses

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading any insufficient defense or any redundant, im-

---

**1.** For the purposes of convenience, the court will refer to the FDIC as the receiver in this case.

material, impertinent, or scandalous matter." Fed.R.Civ. P. 12(f). However, it is also true that "[a] motion to strike an affirmative defense under Rule 12(f) ... for legal insufficiency is not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986) (citation and quotation omitted). In other words, the court will not strike an affirmative defense unless the moving party can establish that the defense is totally insufficient as a matter of law. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976). When an affirmative defense is unsupportable as a matter of law, it should be stricken in order to avoid unnecessary litigation on the question. *See FDIC v. Eckert Seamans Cherin & Mellott*, 754 F.Supp. 22, 23 (E.D.N.Y. 1990). The court finds that the FDIC's motion to strike provides an appropriate means for resolving the present question of law.

## II. Applicable Law

### A. *O'Melveny & Myers v. FDIC*

In 1994, the Supreme Court altered the balance of power in federal receivership law when it issued its ruling in *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). Both parties agree that *O'Melveny* represents important precedent in this case. However, the parties disagree as to the proper interpretation.

In *O'Melveny*, the FDIC was the receiver for American Diversified Savings Bank ("ADSB"). 512 U.S. at 81–82, 114 S.Ct. 2048. The law firm of O'Melveny & Myers

had represented ADSB in connection with two real estate syndications. However, in representing ADSB, O'Melveny & Myers failed to verify ADSB's financial status with any of ADSB's outside accounting firms. After ADSB was declared insolvent, the FDIC as receiver sued, among others, O'Melveny & Myers. The FDIC asserted that the firm's failure to check on ADSB's finances constituted professional malpractice and a breach of fiduciary duty. *Id.* at 81–82, 114 S.Ct. 2048.

O'Melveny & Myers moved for summary judgment and argued, among other things, that the FDIC should be estopped from pursuing a tort claim against the firm because as a law firm "it owed no duty to ADSB ... to uncover the S & L's own fraud; [and that] knowledge of the conduct of ADSB's controlling officers must be imputed to the S & L, and hence to [the FDIC], which, as receiver, stood in the shoes of the S & L ...." *Id.* at 82, 114 S.Ct. 2048.

Justice Scalia, writing for a unanimous Court, framed the issue to be decided as follows: "[W]hether, in a suit by the Federal Deposit Insurance Corporation ... as receiver of a federally insured bank, it is a federal-law or rather a state-law rule of decision that governs the tort liability of attorneys who provided services to the bank." *Id.* at 80–81, 114 S.Ct. 2048. The Court held that in actions brought by the FDIC as receiver, state common law governed tort liability—including the affirmative defenses of estoppel and imputation.[2]

The Court divided its reasoning in *O'Melveny* into two discrete, alternative parts. The Court first assumed that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"),[3] governed the case, and then for the purposes of analysis assumed that FIRREA did not govern. *See FDIC v.*

---

**2.** Having reached this decision, the Court remanded the case to the Ninth Circuit for resolution of how California's law of imputation should apply. *O'Melveny*, 512 U.S. at 89, 114 S.Ct. 2048.

**3.** Pub.L. No. 101–73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.).

*Haines,* 3 F.Supp.2d 155, 160 (D.Conn. 1997) (noting *O'Melveny*'s alternative analyses).

In both of its analyses, the Court found that state, not federal, common law governed the issue of whether the knowledge of the failed banks' officers should be imputed to the corporation or the FDIC as receiver.

With respect to the first analysis, the defendant law firm argued that section 1821(d)(2)(A)(i) of FIRREA[4] was merely a *"nonexclusive* grant of rights to the FDIC receiver, which can be supplemented or modified by federal common law ...." *O'Melveny,* 512 U.S. at 86, 114 S.Ct. 2048. The Court rejected this argument and held that FIRREA provided a specialized and exclusive set of federal rules regarding "claims by, and defenses against, the FDIC as receiver." *Id.* Invoking the doctrine of "[i]nclusio unius, exclusio alterius,"[5] the Court refused to add federal common law provisions to FIRREA because "[t]o create additional common-law exceptions is not to supplement this scheme, but to alter it." *Id.* at 86–87, 114 S.Ct. 2048 (quotations omitted).

However, the Court and the parties in *O'Melveny* were uncertain whether FIRREA governed the dispute because FIRREA had been enacted in 1989; and the FDIC, through its predecessor in interest, had been appointed as receiver of ADSB in 1986. "[R]eluctant to rest [its] judgment on FIRREA alone," the Court alternatively assumed that FIRREA was inapplicable and inquired whether "this is ... one of those cases in which judicial creation of a special federal rule would be justified." *Id.* at 87, 114 S.Ct. 2048. The Court con-

cluded that in order to craft federal common law, there had to be a "significant conflict between some federal policy or interest and the use of state law." *Id.* (quotation omitted). However, the Court found that in this case there was:

> [No] identifiable [federal] policy or interest ... [because] the rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred.

*Id.* at 88, 114 S.Ct. 2048.

### B. "No–Duty Rule" and *O'Melveny*

Prior to *O'Melveny,* several circuit courts held that federal receivers, like the FDIC, were not subject to affirmative defenses based on the receiver's discretionary conduct—including post-receivership conduct. *See FDIC v. Oldenburg,* 38 F.3d 1119, 1122 (10th Cir.1994);[6] *FDIC v. Mijalis,* 15 F.3d 1314, 1323 (5th Cir.1994); *FDIC v. Bierman,* 2 F.3d 1424, 1438 (7th Cir.1993). *Oldenburg, Mijalis,* and *Bierman* were based largely on the so-called "no-duty rule."

> The thrust of th[e no-duty rule] is that any affirmative defense calling into question the pre- or post-bank closing actions of the FDIC are insufficient as a matter of law because the FDIC owes no duty to the officers and directors of a failed bank, either in its pre-failure regulation of a bank or in its post-failure liquidation of the same.

*FDIC v. Schreiner,* 892 F.Supp. 848, 853 (W.D.Tex.1995). In the wake of *O'Melve-*

---

4. "The Corporation shall, as conservator or receiver, and by operation of law, succeed to—(i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountable, depositor, officer, or director of such institution with respect to the institution and the assets of the institution ...." 12 U.S.C. § 1821(d)(2)(A)(i) (1994).

5. Translated: the inclusion of one is the exclusion of another. *See Blacks Law Dictionary* 763 (6th ed.1990).

6. While *Oldenburg* was technically decided after *O'Melveny,* the court in *Oldenburg* did not cite *O'Melveny* at all; and thus, it appears that the court there did not account for *O'Melveny.*

*ny*, there has been a split among district courts over whether *O'Melveny* enables defendants to assert an affirmative defense against the FDIC as receiver based on the FDIC's alleged negligence or alleged failure to mitigate damages. *See Resolution Trust Corp. v. Liebert*, 871 F.Supp. 370, 373 (C.D.Cal.1994) (discussing the split among district courts).

In one line of cases, courts have found that *O'Melveny* has not abrogated the FDIC's immunity from affirmative defenses based on its discretionary, post-receivership conduct. *See FDIC v. Healey*, 991 F.Supp. 53, 62 (D.Conn.1998); *FDIC v. Raffa*, 935 F.Supp. 119 (D.Conn.1995); *FDIC v. Schreiner*, 892 F.Supp. 848 (W.D.Tex.1995); *Resolution Trust Corp. v. Sands*, 863 F.Supp. 365 (N.D.Tex.1994); *Resolution Trust Corp. v. Bright*, 157 F.R.D. 397 (N.D.Tex.1994). These courts that have preserved the FDIC's immunity have reached their holdings through different lines of reasoning.

For example, in *Healey*, the court insulated the FDIC from affirmative defenses based on its post-receivership conduct because there was a "significant conflict" between the important "federal interest[s]" in granting deference to the FDIC's discretionary conduct and the application of state law affirmative defenses. 991 F.Supp. at 61–62.

The court in *Schreiner* reasoned differently and found that *O'Melveny* required courts to treat the FDIC strictly as though it had "step[ped] into the shoes" of a failed bank. 892 F.Supp. at 857. The *Schreiner* court therefore rejected the idea that the FDIC should be in a better or worse position than the failed bank would have been if the bank had brought suit itself. The court went on to explain:

> [T]he FDIC, when it brings suit as a receiver of a failed bank, takes it subject only to those affirmative defenses that would have been available to the defendants against the bank if the bank had brought suit. In other words, the defendants are allowed to assert those affir-mative defenses which challenge actions taken by the bank or other persons prior to the bank closing and being placed into receivership. Put conversely, the defendants are precluded from asserting any affirmative defenses which question the post-receivership actions of the FDIC.

*Id.* at 857 (emphasis omitted).

On the other hand, many courts have held that *O'Melveny* has impliedly over-ruled the no-duty rule and has cleared the way for defendants to assert affirmative defenses based on the FDIC's discretionary activities that occur post-receivership. *See FDIC v. Ornstein*, 73 F.Supp.2d 277 (E.D.N.Y.1999); *FDIC v. Gladstone*, 44 F.Supp.2d 81 (D.Mass.1999); *FDIC v. Haines*, 3 F.Supp.2d 155 (D.Conn.1997); *Resolution Trust Corp. v. Liebert*, 871 F.Supp. 370 (C.D.Cal.1994).

In *Ornstein*, the court concluded that *O'Melveny* had completely undermined the no-duty rule. 73 F.Supp.2d at 281–83. Furthermore, the court held that the affirmative defense of failure to mitigate damages was actually consistent with the FDIC's statutory mandates under FIR-REA, and that *O'Melveny* had freed defendants to assert state law affirmative defenses against the FDIC. *Id.* at 285–87.

Similarly, in *Haines*, the court found that *O'Melveny* had dismantled the concept that federal common law insulated the FDIC from state law affirmative defenses. 3 F.Supp.2d at 161–62. Further, that court concluded that federal policy interests in these kinds of cases were insufficient "to justify the judicial creation of a special federal common law rule." *Id.* at 162.

### III. FIRREA Bars Use of Federal Common Law

#### A. The Applicable *O'Melveny* Analysis

As was the case in *Ornstein* and *Liebert*, only the first part of *O'Melveny*'s analysis

applies to this action because, in this case, FIRREA clearly governs. FIRREA was enacted in 1989. *See* FIRREA, Pub.L. No. 101–73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.). The FDIC, through its predecessor in interest, was appointed receiver of Empire in 1990. *See* Item 1, ¶¶ 9–10.

Thus, the court rejects the FDIC's argument in which the FDIC relies on language from *O'Melveny*'s second analysis. *See* Item 73, pp. 10–11. In that argument, the FDIC asserts that the Court in *O'Melveny* intended its holding to apply only to affirmative defenses that arise out of actions taken by the bank's own officers and agents prior to the bank's failure. In support of this argument, the FDIC relies on the following language from *O'Melveny:*

> [T]he rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, *but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred.*

512 U.S. at 88, 114 S.Ct. 2048 (emphasis added). However, this court has already found that only *O'Melveny*'s first analysis applies to this case. The court rejects the FDIC's argument here because this sentence from *O'Melveny*'s second analysis is irrelevant to the present FIRREA-governed analysis. *See Haines,* 3 F.Supp.2d at 162 (" '[a]ny reliance on the quoted sentence from the second part of *O'Melveny* ... to construe the first part of *O'Melveny,* which analyzed the application of federal common law to post FIRREA suits, is wholly misplaced.' ") (quoting *Schreiner,* 892 F.Supp. at 856).

### B. *O'Melveny*'s Effect on Federal Common Law

■ This court agrees with the holdings of *Ornstein, Haines,* and *Liebert,* where those courts logically concluded that *O'Melveny* had effectively ended the use of federal common law in cases governed by FIRREA.

In *O'Melveny,* the Court characterized FIRREA as a detailed and comprehensive set of federal regulations concerning federal receiverships. *See* 512 U.S. at 86–87, 114 S.Ct. 2048. The court in *Liebert* then found that the no-duty rule represented nothing more than federal common law "which has been engrafted by federal courts onto the statutory scheme of FIRREA ...." 871 F.Supp. at 373 (quotation and citation omitted). Indeed, "Congress has stepped into this arena with a comprehensive statutory scheme. [The court's] task is not to determine whether [it] should fashion a federal rule in the absence of statutory guidance ... but rather to construe FIRREA." *See Ornstein,* 73 F.Supp.2d at 283–84 Rather than create federal common law, this court takes its cue from the Supreme Court in *O'Melveny:* "[M]atters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law." 512 U.S. at 85, 114 S.Ct. 2048.

FIRREA's incorporation of state standards of law provides further support for the court's holding. *See* 12 U.S.C. § 1821(k) (1994); *see also Atherton v. FDIC,* 519 U.S. 213, 218, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997) (observing in a FIRREA action that "Congress acts ... against the background of the total corpus juris of the states").

■ The court acknowledges that FIRREA contains a number of provisions which vest discretion in the FDIC as receiver. *See, e.g.,* 12 U.S.C. § 1821(c)(13)(B)(ii), (d)(4). However, FIRREA contains no provision that insulates the FDIC from state law affirmative defenses regarding the FDIC's post-receivership conduct. *See Haines,* 3 F.Supp.2d at 163. Indeed, "it is too much of a leap from [these general provisions of discretion] to a highly specific rule preempting state laws relating to mitigation of damages ...." *Ornstein,* 73 F.Supp.2d at 284–85.

A brief word on the countervailing cases is in order.[7] The court declines to follow two decisions from this circuit: *Federal Deposit Ins. Corp. v. Healey*, 991 F.Supp. 53 (D.Conn.1998), and *Raffa*, 935 F.Supp. 119. The *Healey* court insulated the FDIC from affirmative defenses that arise out of the FDIC's post-receivership conduct. The court in *Healey* based its holding in part on the "important federal interests" in deferring to the FDIC's discretionary decision making. However, unlike the *Healey* court, this court has already found that FIRREA generally forecloses the use of federal common law. *See supra*. Further, the court finds that the "federal interests" identified in *Healey* are insufficient to warrant the creation of federal common law. *See infra*, Discussion, Part III C. Finally, the court rejects the *Healey* court's reliance on the Supreme Court's decision in *U.S. v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). In *Gaubert*, the Supreme Court reversed the decision of the Fifth Circuit and held that the discretionary function exception of the Federal Tort Claims Act ("FTCA") insulated federal regulators from liability for managerial decisions they made regarding a failed bank. However, this case differs critically from *Gaubert*, in that it does not involve a claim against the FDIC under the FTCA. Thus, the FTCA's discretionary function exception has no place in the court's present analysis. *See Schreiner*, 892 F.Supp. at 858.

As for *Raffa*, that court overlooked *O'Melveny*'s two-part analysis and, as a result, concluded that the no-duty rule was still viable. 935 F.Supp. at 125–26. This court has already found that dicta from *O'Melveny*'s common law analysis should not be read as limiting the scope of *O'Melveny*'s FIRREA-based analysis. *See supra*, Discussion, Part III A. For these reasons, the court declines to follow *Raffa*.

Finally, with respect to *Schreiner*, the court there insisted on scrupulously placing the FDIC "into the shoes" of the failed bank. As a result, the court protected the FDIC from state law affirmative defenses based on its post-receivership conduct. *Schreiner*, 892 F.Supp. at 857. However, such a policy is not expressly set forth in FIRREA, and imposing it would amount to the creation of federal common law. Thus, the court declines to follow *Schreiner*.

In light of the foregoing, the court finds that, under FIRREA, MassMutual may assert its disputed state law affirmative defenses against the FDIC, provided that New York State law allows. *See infra*, Discussion, Part IV.

### C. Absence of "Significant Conflict"

█ Assuming *arguendo* that the court could apply federal common law in this case, despite FIRREA's comprehensive regulation, the court would *still* find that such action is unwarranted. Courts may only create and impose federal common law in a "few and restricted" number of cases. *O'Melveny*, 512 U.S. at 87, 114 S.Ct. 2048. Such cases are "limited to situations where there is a significant conflict between some federal policy or interest and the use of state law." *Id.* (quotation omitted).

---

**7.** The parties have previously submitted arguments based on *RTC v. Moskowitz*, 1994 WL 229812 (D.N.J. May 24, 1994), *modified by* 1994 U.S. Dist. LEXIS 20553 (D.N.J. Aug. 12, 1994). At one point, it appeared as though *Moskowitz* would be a leading case for this court to consider. However, the court now finds *Moskowitz* to be of limited value. The first *Moskowitz* decision, 1994 WL 229812 (D.N.J. May 24, 1994) (*"Moskowitz I "*), was decided in May 1994, a full month before *O'Melveny*. While it is true that the *Moskow-*itz court revisited certain issues of law after *O'Melveny* came to light, 1994 U.S. Dist. LEXIS 20553 (D.N.J. Aug. 12, 1994) (*"Moskowitz II "*), this court disagrees with *Moskowitz II*'s interpretation of *O'Melveny* in much the same way that this court disagrees with *FDIC v. Raffa*, 935 F.Supp. 119. *See Moskowitz II*, U.S. Dist. LEXIS 1994 20553, at *17–18; *see also supra*, Discussion, Part III, A and *infra* (discussing why this court does not follow reasoning of *Raffa* and *Moskowitz II* ).

Here, the court takes note of the Supreme Court's recent decision in *Atherton,* 519 U.S. 213, 117 S.Ct. 666, 136 L.Ed.2d 656. In *Atherton,* the Court held that where "the FDIC [as receiver] is acting only as the receiver of the failed institution; it is not pursuing the interest of the Federal Government as a bank insurer . . . ." 519 U.S. at 225, 117 S.Ct. 666. One court has read *Atherton* as standing for the proposition that "[b]ecause the FDIC is not pursuing the interests of the United States, its conduct can not represent significant federal policies or interests sufficient to justify the imposition of a federal common law." *Haines,* 3 F.Supp.2d at 163.

■ Even if the court were to ignore *Atherton* and accept that the FDIC as receiver could represent significant federal policy interests, the court would still refuse to impose federal common law in this case.

. On this count, the FDIC argues that there is significant conflict between the application of state law in this case and several federal policies. First, the FDIC urges the federal policy against judicially second-guessing the discretionary actions of the FDIC. *See* Item 78, pp. 7–9. Further, the FDIC argues that state affirmative defenses would significantly conflict with the no-duty rule. Finally, the FDIC asserts that federal policy favors holding culpable parties responsible for the costs of bailing out insolvent banks, rather than forcing the public to bear such costs. *See id.* at 8–10.

The court rejects the FDIC's arguments. The alleged public policy in favor of forcing alleged wrongdoers to pay for a failed bank's insolvency does not warrant allowing the FDIC to recover money to which it not entitled. Furthermore, both *O'Melveny* and *Gladstone* have rejected the idea that there is a federal policy interest in protecting the Federal Deposit Fund against depletion. In *O'Melveny,* the Court stated:

The closest respondent comes to identifying a specific, concrete federal policy or interest that is compromised by California law is its contention that state rules regarding the imputation of knowledge might "deplet[e] the deposit insurance fund." But neither FIRREA nor the prior law sets forth any anticipated level for the fund, so what respondent must mean by "depletion" is simply the forgoing of *any* money which, under any *conceivable* legal rules, might accrue to the fund. That is a broad principle indeed, which would support not just elimination of the defense at issue here, but judicial creation of new, "federal common-law" causes of action to enrich the fund. Of course we have no authority to do that, because there is no federal policy that the fund should always win. Our cases have previously rejected "more money" arguments remarkably similar to the one made here.

512 U.S. at 88, 114 S.Ct. 2048 (citations omitted).

In *Gladstone,* the district court endorsed the ruling of *O'Melveny,* holding:

The public policy argument that those "guilty" of wrongdoing, rather than the public, should bear the possible errors of judgment by the [FDIC] as receiver, is also problematic. This policy amounts to nothing more than a policy of letting the FDIC win regardless of the facts. As the court in *O'Melveny* said, "there is no federal policy that the fund [i.e. FDIC] should always win."

44 F.Supp.2d at 88. In light of *O'Melveny* and *Gladstone,* the court rejects the FDIC's argument that it should be insulated from the disputed affirmative defenses because of a federal policy against depleting the fund.

With respect to the idea that the FDIC does not owe a duty to the directors, officers, or hired professionals of a failed bank, the court first notes that the duty to mitigate damages is not, in fact, a duty owed to anyone else. *See Gladstone,* 44 F.Supp.2d at 87 ("the person wronged

should not be spoken of as under a 'duty' to avoid damage, but rather a 'disability' to recover for avoidable loss") (citing McCormack's *Handbook on the Law of Damages*). In any event, the court finds that *O'Melveny* has all but eliminated the significance of the no-duty rule.

Moreover, this court finds that state law affirmative defenses, like failure to mitigate damages and contributory negligence, do not conflict with FIRREA's policies. Rather, this court agrees with *Ornstein*, which held that certain FIRREA mandates are totally consistent with, rather than in conflict with, a duty to mitigate damages and a duty to conduct receivership activities with due care. 73 F.Supp.2d at 285–86. Specifically, FIRREA generally mandates that the FDIC: "(i) maximize the net present value return from the sale or disposition of such assets [and] (ii) minimize[ ] the amount of any loss realized in the resolution of cases ...." 12 U.S.C. § 1821(d)(13)(E) (1994). These requirements seem nondiscretionary and "appear to be another way of stating the content of duty" to mitigate damages. *Ornstein*, 73 F.Supp.2d at 285–86. The court in *Gladstone* lends further support to this court's harmonious reading of the disputed affirmative defenses and FIRREA's mandates: "[T]he duties at issue here—the duty to dispose of assets according to FIRREA's objectives, and the state-law duties not to act negligently in so doing and to mitigate damages—are distinct but compatible." *Gladstone*, 44 F.Supp.2d at 87.

In light of the foregoing discussion, the court would still find the use of federal common law to be unwarranted, even if the court were to assume that FIRREA did not preclude federal common law in this case.

### IV.  New York State Law

The court has concluded that state law governs the question of whether, based on the FDIC's discretionary and post-receivership conduct, MassMutual may assert the affirmative defenses of contributory negligence and failure to mitigate damages against the FDIC. The remaining question, then, is whether MassMutual is entitled to assert such affirmative defenses under New York law.

For its part, MassMutual has asserted that "all of MassMutual's defenses are valid under New York law ...." Item 70, p. 16. The FDIC counters that New York law clearly bars the disputed affirmative defenses. *See* Item 73, pp. 15–17. The court has considered the FDIC's arguments on this point and finds that New York law is, in fact, silent on this issue.

In support of its position, the FDIC cites to a number of cases. First, the FDIC relies on cases like *Union Indemnity Ins. Co. v. American Centennial Ins. Co.*, 89 N.Y.2d 94, 651 N.Y.S.2d 383, 674 N.E.2d 313 (1996), for the proposition that courts must carefully place liquidators and receivers into the "same shoes" as the failed corporation. To the FDIC's thinking, these cases bar affirmative defenses based on post-receivership conduct, because such affirmative defenses would take the FDIC out of a failed bank's "shoes" to some extent. However, *Union Indemnity*, and cases like it, only hold that liquidators and receivers must not be placed in a better position than the failed institution. 651 N.Y.S.2d at 390, 674 N.E.2d 313. That is, these cases ensure that liquidators are subject to the same affirmative defenses to which the failed institutions would have been subject. This court does not read these cases so broadly as to bar affirmative defenses based on a receiver's post-receivership conduct.

The FDIC also cites *McCormack v. City of New York*, 80 N.Y.2d 808, 587 N.Y.S.2d 580, 600 N.E.2d 211 (1992), for the proposition that New York courts accord great deference to the discretionary decisions of government agencies. *See id.* at 582, 600 N.E.2d 211. Here, too, the court rejects the FDIC's argument and refuses to read this generic doctrine in *McCormack* as

applying specifically to the narrow issue in this case. In fact, in *Atherton,* the Supreme Court held that the FDIC as receiver does not even act in the interests of the United States government. 519 U.S. at 225, 117 S.Ct. 666. In addition, FIRREA may be read as giving the FDIC certain nondiscretionary duties which are analogous to and compatible with the disputed affirmative defenses here. *See supra* p. 309.

The FDIC also relies on *FDIC v. RGB Int'l Property, Inc.,* 214 A.D.2d 603, 625 N.Y.S.2d 256 (2d Dep't 1995). In that case, the court insulated the FDIC from the affirmative defense of fraud where the defendant alleged that it had been defrauded in signing a contract because the failed bank was involved in "secret arrangements" at the time the contract was signed. *Id.* at 257. The court in *RGB International,* however, based its holding on the "*D'Oench* doctrine."

Without delving into an examination of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its progeny of common and statutory law, the court notes that the Supreme Court first created this doctrine in order to protect the FDIC from the defenses arising from failed banks' so-called secret arrangements. *See generally* Robert B. Markworth, "Survival of the Federal Common Law *D'Oench* Doctrine?" 1 *N.C. Bank Inst.* 436 (1997). Several years after *D'Oench* was decided, Congress codified it in the Federal Deposit Insurance Act. *See id.* at 437. Then, when FIRREA was enacted in 1989, Congress further endorsed the *D'Oench* doctrine and codified much of its common law expansion. *See id.* In light of the foregoing, this court finds certain New York courts' reliance on the *D'Oench* doctrine to be irrelevant to the present analysis.

■ The court is again in agreement with *Ornstein.* There, Judge Gleeson noted that New York is, by default, a state which applies principles of comparative negligence in a tort action. 1999 WL 1072529, at *9; *see also* N.Y. Civ. Prac. L. & R. §§ 1411, 1412 (McKinney 1997). The duty to mitigate damages, of course, is implicit within the comparative negligence framework. Without any clear New York authority to the contrary, this court agrees with *Ornstein* and finds that MassMutual may assert its second and fourth affirmative defenses based on the FDIC's alleged contributory negligence and alleged failure to mitigate damages.

## CONCLUSION

Based on the discussion herein, the court denies plaintiff FDIC's motion to strike MassMutual's second and fourth affirmative defenses (Item 78). Further, the court grants in part defendant MassMutual's motion to compel (Item 62) to the extent that it seeks discovery of non-privileged information and documents relating to the FDIC's post-receivership conduct.

The FDIC shall have until March 7, 2000, to comply with this order by making further responses to MassMutual's motion to compel.

So ordered.