**RESOLUTION TRUST CORPORATION, as Receiver for Westport Federal Savings Bank, Plaintiff,**

v.

**Sandra E. LIEBERT, et al., Defendants.**

**No. SA CV 93–256 GLT [JJG].**

United States District Court, C.D. California.

Dec. 6, 1994.

Jeffrey S. Benice, Anton M. Rosandic, Benice & Associates, Irvine, CA, and D. Curtis Webster, and Kay V. Gustafson, Gustafson & Webster, Tustin, CA, for plaintiff.

Rosen Law Firm, Peter K. Rosen and Wendy J. Phillippay, Los Angeles, CA, for defendants.

## ORDER ON MOTION FOR RECONSIDERATION

TAYLOR, District Judge.

Rejecting the majority trend of District Court authority, the court holds that, for purposes of FIRREA, the federal "no duty" rule does not survive the Supreme Court's *O'Melveny* decision, and does not apply to post-FIRREA suits. The court also holds that, despite California's rule against transfer of punitive damages claims, the RTC succeeds to the punitive damages claim of a bank it takes over.

## I. *BACKGROUND*

The RTC brought this action based on the alleged negligence, gross negligence, and breach of fiduciary duty of Allan Liebert, a deceased director, officer, and general counsel of Westport Federal Savings Bank. Defendants are his executrix, surviving spouse, and revocable trust trustees. The Court previously granted the RTC's motion to strike various affirmative defenses on the basis of the federal "no duty" rule. Defendants now move for reconsideration in light of the intervening Supreme Court decision in *O'Melveny & Myers v. FDIC,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

## II. *DISCUSSION*

The court here reviews two matters. The first is the applicability of the federal "no duty" rule in FIRREA cases after the Supreme Court's recent *O'Melveny* decision. The second is the transferability of a punitive damages claim to the RTC in view of *O'Melveny* and California's prohibition on punitive damages transferability.

### A. *Federal "No Duty" Rule.*

#### 1. *The O'Melveny decision*

■ In *O'Melveny,* the FDIC brought state-law claims against a law firm that had worked on real estate deals involving a failed savings and loan. The law firm asserted a state-law affirmative defense that the S & L had knowledge of its officers' actions and such knowledge was imputable to the receiver. The Supreme Court held the question whether the S & L's knowledge could be imputed to the FDIC was governed by state and not federal law.

For purposes of this motion, it is critical to note the two separate parts of the *O'Melveny* analysis. The receivership in that case began before enactment of FIRREA. It was not clear, therefore, whether FIRREA applied. *Id.* at —— ——, 114 S.Ct. at 2054–55. The Court first assumed FIRREA did apply and analyzed the propriety of promulgating federal common law to supplement FIRREA. *Id.* at ——, 114 S.Ct. at 2054. The Court then turned to the question whether, if FIRREA did not apply, it would have been appropriate to use a federal common law rule of decision. *Id.* at —— – ——, 114 S.Ct. at 2055–56.

Because this action is unequivocally governed by FIRREA, only the first part of *O'Melveny* is applicable here.

The FDIC's suit in *O'Melveny,* like the RTC's suit here, was authorized by 12 U.S.C. § 1821(d)(2)(A)(i), stating the federal receiver shall "by operation of law, succeed to—all rights, titles, powers, and privileges of the insured depository institution." The FDIC argued in *O'Melveny* that the statute was a nonexclusive grant of rights to the receiver that could be supplemented by federal common law designed to further the important federal policies underlying FIRREA. The *O'Melveny* Court rejected that argument. FIRREA contains several special federal rules of decision relating to suits by federal receivers. "To create additional 'federal common-law' exceptions is not to 'supplement' this scheme, but to alter it." *O'Melveny,* —— U.S. at ——, 114 S.Ct. at 2054.

*O'Melveny* holds the complex Congressional scheme codified in FIRREA should be

respected. What Congress chose to put in is to be enforced, and what it left out is not to be added by judicial fiat. "It is hard to avoid the conclusion that § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise." *Id.* at ——, 114 S.Ct. at 2054.

■ In the second part of its decision, the *O'Melveny* Court discussed whether creation of a special federal rule of decision would have been appropriate before FIRREA. It is that discussion the RTC relies on here. But, the latter part of *O'Melveny* is inapplicable to this case. Before FIRREA, when there was not a statutory scheme specifically addressing the receiver's rights and obligations in this type of suit, the situation was different. A federal court would have looked for a "significant conflict between some federal policy or interest and the use of state law," *id.* at ——, 114 S.Ct. at 2055 (quotation omitted), to decide whether to supplant state law with a federal rule of decision. The first part of *O'Melveny* must not be forgotten. Once Congress enacts comprehensive legislation in a particular area, the courts may not add extra federal rules not derived from the legislation itself.

Because this case is governed by FIRREA, the only relevant issue is how to construe the statute. Whether the "no duty" rule or any other rule of decision is applicable depends on whether it is provided by "some provision in the extensive framework of FIRREA." This court may not supplement FIRREA by discovering a federal policy and analyzing the conflict between it and the use of state law.

### 2. The "no duty" rule

■ The Court's previous order was largely based on the federal rule that the RTC owes no duty to the directors and officers of a failed institution. The receiver's task is to repair the damage allegedly done by those directors and officers by covering the losses they have caused, while attempting to deplete the tax-supported insurance fund as little as possible. The policy underlying receivership imposes on the receiver a duty to the public, not to those allegedly responsible for creating the problem in the first place. *See, e.g., FDIC v. Bierman,* 2 F.3d 1424, 1438–40 (7th Cir.1993); *FDIC v. Baker,* 739 F.Supp. 1401, 1404–07 (C.D.Cal.1990). Defendants now urge the Court to reconsider because the "no duty" rule is part of the federal common law rejected by *O'Melveny.*

The RTC argues *O'Melveny* is distinguishable. *O'Melveny* involved a suit against a third party, while this case is in essence against a bank director and officer. In *O'Melveny,* defendants wanted to use defenses against the FDIC that would have been available against the failed S & L before receivership. Here, the defenses have arisen at least in part since the receivership began. Most significant in the eyes of the RTC, the defenses in *O'Melveny* were based on the conduct of private parties, while the affirmative defenses in this case are based on the conduct of the RTC itself.[1]

■ These distinctions are not significant in light of the first part of the *O'Melveny* analysis. Given FIRREA's comprehensive approach to state-law suits by and against federal receivers, no federal rule of decision regarding those suits exists beyond rules derived from FIRREA itself. The RTC argues *O'Melveny* is limited to defenses arising from the conduct of private parties. But, nothing in the first part of *O'Melveny* supports such a limitation. *O'Melveny* does not say there must be no supplementary common law pertaining to affirmative defenses arising from the conduct of private parties. It holds there must be no supplementary common law at

---

1. The language of § 1821(d)(2)(A)(i) does appear to support the RTC. The import of that section is the receiver steps into the shoes of the failed institution. Thus, *O'Melveny* could be seen as saying merely that the receiver must take the good with the bad. In other words, it succeeds not only to the state-law causes of action belonging to the institution but also to the affirmative defenses to those causes of action. If that were all *O'Melveny* meant, the case would not apply to affirmative defenses based on the post-receivership conduct of the RTC, which obviously could not have been inherited from the failed institution. The rationale of *O'Melveny,* however, is not so limited.

all. Supplementing FIRREA with the "no duty" rule would alter the statutory scheme.

The RTC supports its proffered distinction between this case and *O'Melveny* with this sentence from *O'Melveny:*

> The rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred.

—— U.S. at ——, 114 S.Ct. at 2055. If this sentence were crucial to the *O'Melveny* analysis, the case would be distinguishable.

As previously noted, however, there are two parts to *O'Melveny.* This sentence comes from the second part, in which the Court analyzes whether a federal rule of decision would be appropriate in the absence of FIRREA. The sentence is one of the bases for the Court's rejection of federal common law *in the absence of* FIRREA. If there were no FIRREA, this Court's task would be to determine whether federal policy conflicted with the use of state-law affirmative defenses. In that situation, the fact the RTC's conduct is at issue might be a reason to apply a federal rule. The federal policy interests would be even stronger in this case than they were in *O'Melveny.* But that is not the situation. FIRREA exists. The "no duty" rule is not an interpretation of the statute, but an impermissible addition to it.

There is an uneven split of authority among district courts that have considered whether the "no duty" rule survives *O'Melveny.* Some decisions do not indicate whether the relevant receivership began before or after the effective date of FIRREA. Discounting those cases, it appears the heavy majority position is that the "no duty" rule applies to post-FIRREA suits. *See, e.g., RTC v. Sands,* 863 F.Supp. 365, 369–370 (N.D.Tex.1994); *RTC v. Edie,* Civ. No. 94–772, at 8–9 (D.N.J. October 4, 1994); *Kansas Pub. Emp. Retirement Sys. v. Reimer & Koger Assoc., Inc.,* No. 92–0922–CV–W–9, at 2–5 (D.Kan. September 20, 1994). The contrary view is stated in the lone case of *RTC v. Ross,* 1994 WL 534210, *4–*6 (S.D.Miss. 1994).

The Court respectfully disagrees with the courts in the majority. Each of those courts appears to have distinguished *O'Melveny* on the same grounds urged here by the RTC, namely that *O'Melveny* is limited to defenses arising from the pre-receivership conduct of private individuals. This Court rejects that limitation on *O'Melveny,* and agrees with the court in *Ross.* The "no duty" rule "is clearly a federal common law rule which has been engrafted by federal courts onto the statutory scheme" of FIRREA, and "the supplementation or modification of this statutory scheme by federal common law in this manner is inappropriate...." *Ross,* 1994 WL 534210 at *6.

The court concludes that, for purposes of FIRREA, the federal "no duty" rule does not survive the Supreme Court's *O'Melveny* decision, and does not apply to post-FIRREA suits.

### B. *Transferability of Punitive Damages Claims to RTC.*

■ Defendants contend that the RTC is prohibited from succeeding to the failed S & L's claim for punitive damages on the state law claims because of California's rule against transfer of punitive damage claims. *See People v. Superior Ct. (Jayhill Corp.),* 9 Cal.3d 283, 287, 107 Cal.Rptr. 192, 195, 507 P.2d 1400, 1403 (1973); *Jackson v. Rogers & Wells,* 210 Cal.App.3d 336, 349, 258 Cal.Rptr. 454, 462 (1989). According to defendants, *O'Melveny* compels the Court to adhere to the California rule and deny punitive damages.

Unlike the "no duty" rule, the federal rule of decision supplanting California law is found in FIRREA. 12 U.S.C. § 1821(d)(2)(A)(i) is a federal statute under which the RTC succeeds to "all rights, title, powers, and privileges of the insured depository institution." There is no reason to read Westport's right to punitive damages out of this sweeping provision. California law created certain punitive damage rights Westport had at the time of receivership. Section 1821(d)(2)(A)(i) preempts California's rules regarding whether the RTC can succeed to those state-created rights.

Therefore, the RTC succeeds to the bank's claim for punitive damages, despite the California rule against transfer of punitive damages claims.